Timothy A. Scott (SBN 215074)
Marcus S. Bourassa (SBN 316125)
MCKENZIE SCOTT PC
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 794-0451
E-mail: tscott@mckenziescott.com
        mbourassa@mckenziescott.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD THOMPSON;<br><br>Plaintiff,<br><br>V.<br><br>COUNTY OF SAN DIEGO; SEAN THOMPSON, in his individual capacity; and DOES 1-15,<br><br>Defendants. | Case No.: **'24CV1873 W    SBC**<br><br>**COMPLAINT FOR DAMAGES FOR:**<br>**1. 42 U.S.C. § 1983: Excessive Force**<br>**2. 42 U.S.C. § 1983: Unlawful Detention**<br>**3. 42 U.S.C. § 1983: Illegal Search**<br>**4. Battery**<br>**5. Assault**<br>**6. Cal. Civil Code § 52.1 (Bane Act)**<br>**7. Negligence**<br>**8. Intentional Infliction of Emotional Distress**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DAMAGES

Comes now, Plaintiff Richard Thompson (hereinafter "Richard") for his complaint against Defendants County of San Diego, Sean Thompson (hereinafter "THOMPSON), and DOES 1-15 (hereinafter collectively "Doe Defendants"), inclusive, and hereby alleges as follows:

1.    On the morning of January 30, 2024, San Diego County Sheriff Department employees with a warrant to search for someone in Richard's home unlawfully detained Richard outside his home; illegally rifled through his home,

effects, and personal belongings; and violently attacked Richard by attempting to choke him while he was handcuffed behind his back.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States including 42 U.S.C. § 1983 as well as the United States Constitution.

3. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

5. On April 16, 2024, plaintiff presented to defendant, the County of San Diego (hereinafter "COUNTY"), his Claim for Damages based on the acts, omissions, damages, and injuries described herein pursuant to Government Code § 911.2 (the "Claim").

6. On April 23, 2024, the County acknowledged receive of the Claim.

7. To date, the County has not accepted or rejected the Claim.

8. On or about May 31, 2024, pursuant to California Government Code section 912.4, the Claim was deemed rejected by operation of law.

9. Richard has satisfied the claim presentment requirements under California law and has timely filed suit here.

## PARTIES AND RELEVANT PERSONS

10. At all relevant times, Richard Thompson, plaintiff, was an individual residing in the County of San Diego, California.

11. Richard is a social worker and ordained minister who works at Father Joe's assisting unhoused San Diegans in finding shelter and resources.

12.     Richard is an African American man who is a veteran of the United States Marine Corps.



13.     Before joining Father Joe's, Richard worked for years alongside law enforcement on Homeless Outreach Teams to assist in connecting people with resources.



14.     Richard is a longtime public servant, a respected community leader, and a loving father.

15.    The COUNTY is and was at all relevant times a duly organized public entity operating pursuant to the general laws of California. The COUNTY is a chartered subdivision of the State of California with the capacity to be sued. The COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the County of San Diego Sheriff's Department (hereinafter "SHERIFF") and its agents and employees.

16.    Sean Thompson ("THOMPSON") is and was, at all relevant times employed by the SHERIFF and COUNTY. THOMPSON performed the relevant acts within the course and scope of his employment for the COUNTY. He performed those acts under the color and pretense of the laws of the State of California, to wit, the statutes, ordinances, regulations, policies, customs, and usages of the COUNTY as well as the statutes and regulations of the State of California. At all relevant times, THOMPSON acted with the complete authority and ratification of his principal, the COUNTY. THOMPSON is sued in his individual capacity for damages.

17.    Does 1-15 are other COUNTY employees whose actions or inaction contributed to Richard's injuries and the unlawful acts described herein. The true names of defendants Does 1-15, inclusive, are unknown to Plaintiff at this time, who therefore sue these defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to show the true names and capacities of these defendants when they have been ascertained. Each of the fictitious named defendants is responsible in some manner for the conduct and liabilities alleged herein. Does 1-15 performed the relevant acts within the course and scope of their employment for the COUNTY. They performed those acts under the color and pretense of the laws of the State of California, to wit, the statutes, ordinances, regulations, policies, customs, and usages of the COUNTY as well as the statutes and regulations of the State of California.

/ / /

## GENERAL ALLEGATIONS

18.     As set forth below, the COUNTY is directly liable for damages under federal law pursuant to *Monell v. Department of Soc. Svcs*., 436 U.S. 658 (1978) and its progeny. The COUNTY is vicariously liable for damages under Plaintiff's state law claims, given Plaintiff's allegations that the people who committed the acts and omissions complained of herein were acting in the course and scope of their employment for the COUNTY at the time that the acts and omissions occurred.

19.     Pursuant to Cal. Govt. Code § 815.2(a), COUNTY is vicariously liable for the nonfeasance and malfeasance of the individual defendants, and Does 1-15, inclusive. The individual defendants and Does 1-15, inclusive, are liable for their nonfeasance and malfeasance pursuant to Cal. Civ. Code § 820(a). COUNTY is also liable pursuant to Cal. Govt. Code § 815.6.

20.     Pursuant to California Government Code § 815.2, the COUNTY is vicariously liable to Plaintiff for all of the following causes of action by virtue of the fact that THOMPSON and Does 1-15, acting within the scope of their employment, are liable. Plaintiff makes no claim for punitive damages against the COUNTY.

## THE MORNING DEFENDANTS ILLEGALLY DETAINED RICHARD, INVADED RICHARD'S PRIVACY, AND VIOLENTLY ATTEMPTED TO CHOKE HIM

21.     Richard committed no crime on January 30, 2024.

22.     The defendants knew Richard had committed no crime.

23.     At all relevant times, the defendants lacked even reasonable suspicion Richard had been involved in a crime.

24.     In fact, defendants knew they lacked reasonable suspicion Richard had been involved in any crime.

/ / /

/ / /

25.     On the morning of January 30, 2024, Richard was sitting in his car in the parking lot of his apartment complex preparing for his day when defendants took up positions around and outside his home.

26.     Richard's two-year-old son and four-year-old daughter were asleep inside their home while his teenage daughter and spouse were getting ready for school and work respectively.

27.     There was no one else in Richard's modest apartment.

28.     Richard's apartment was an upstairs unit with a single entry and exit through one door and a single, exterior staircase.

29.     While Richard sat in his car, a dozen or more members of the San Diego Sheriff Department (including the individual defendants here) took up positions outside Richard's home.

30.      The Sheriffs wore tactical gear, including armored vests and helmets.

31.     The Sheriffs carried high-powered semi-automatic rifles.

32.     The Sheriffs looked as if they were responding to an active shooter.

33.     The Sheriffs had no information indicating a threat of violence at Richard's home or apartment complex.

34.     The Sheriffs took up positions between Richard, then in his car, and his apartment.

35.     The Sheriffs then loudly announced that those inside Richard's apartment should exit with their hands up.

36.     Alarmed by the announcement and concerned for his children and spouse inside, Richard approached the Sheriffs to ask what was going on.

37.     Richard told the Sheriffs he lived there.

38.     The Sheriffs asked Richard if he had any weapons and Richard informed them he had a pocket knife then removed it from his pocket and set it on the hood of his vehicle.

/ / /

COMPLAINT

39.     The Sheriffs then confirmed Richard did not possess any other weapons.

40.     The Sheriffs informed Richard that they were there to serve a warrant and asked if Richard knew Alejandro Gonzalez.

41.     The Sheriffs present all understood Richard was not the target of their warrant.

42.     The warrant permitted Sheriffs to search "For the person known as Alejandro Gonzalez . . . a Hispanic male. . . [with] distinctive tattoos on his left hand."

43.     Richard told them he knew Alejandro, but he no longer lived at the apartment and was no there that morning.

44.     Alejandro, Richard's spouse's teenage son from a prior relationship, had not lived there in years.

45.     Richard could see Sheriffs pointing high-powered rifles at his apartment door, behind which his were wife, teenage daughter, and two very young children.

46.     Richard lawfully expressed concern for his family.

47.     At all relevant times alleged herein, Richard's conduct was lawful and did not interfere with or obstruct the Sheriffs' investigation.

48.     Before Richard could elaborate a Sheriff Sergeant, THOMPSON, ran over.

49.     THOMPSON ordered Richard to sit down on the ground.

50.     At the time THOMPSON ordered Richard to sit down on the ground, Richard had committed no crime, nor was there reasonable suspicion to believe Richard had committed a crime.

51.     Richard expressed more concern for his family inside.

52.     THOMPSON then decided to (and did) handcuff Richard behind his back.

COMPLAINT

53.     Richard made no movements and took no actions which might justify the use of handcuffs.

54.     Richard clearly posed no danger to the Sheriffs and was not interfering with their investigation in any respect.

55.     At all relevant times, Richard was so far from the entry to his home that he could not reasonably interfere with the execution of the warrant or any other investigation.

56.     THOMPSON then roughly grabbed Richard and escorted Richard, then handcuffed, towards what appeared to be a SWAT van.

57.     Richard was surrounded by nearby members of law enforcement.

58.     Richard was complying with commands and handcuffed behind his back.

59.     Richard was more than 100 feet from the apartment in which the Sheriffs planned to search for Alejandro Gonzalez (hereinafter "Alejandro").

60.     Richard, still handcuffed behind his back, continued to vocally express concern for his family – at whom Sheriffs were pointing high-powered rifles.

61.     THOMPSON got angry.

62.     THOMPSON got frustrated with Richard.

63.     Then THOMPSON reacted to Richard's pleas for his family's safety by abruptly attacking Richard.

64.     THOMPSON, standing face to face with Richard, pushed Richard's back against a vehicle.

65.     THOMPSON placed his right hand around Richard's neck while Richard was handcuffed behind his back.

66.     THOMPSON squeezed his hand around Richard's throat.

67.     THOMPSON's motion was in the nature of an attempt to choke Richard.

68.    In at least the moments he did so, THOMPSON intended to and attempted to kill Richard by throttling his neck while he was handcuffed.

69.    THOMPSON intended his actions to convey to Richard that THOMPSON would and could kill him.

70.    THOMPSON's actions *did* convey to Richard that THOMPSON intended to try to kill him.

71.    Richard's thoughts shifted from concern for his family, to concern he was about to be killed.

72.    As THOMPSON tried to throttle his neck, Richard believed he might be about to die.

73.    Richard was able to wriggle free of THOMPSON's grip by arching his body backwards.

74.    Richard tried you yell words to the effect of "You're really going to get me in handcuffs to choke me, an innocent man!?"

75.    Richard's pleas or the movement of the attack garnered attention from other Sheriffs present who moved closer.

76.    THOMPSON loosened his grip on Richard's throat.

77.    Frustrated, THOMPSON walked away.

78.    At all relevant times, Richard posed no danger to THOMPSON.

79.    Richard made no movements and took no actions which might justify the use of any force against Richard.

80.    Another Sheriff came over to ask for Richard's wife's phone number, which Richard provided.

81.    The Sheriffs kept Richard handcuffed behind his back for approximately 15 minutes.

82.    There was no investigative or safety concern justifying Richard's continued detention, let alone the use of handcuffs.

/ / /

83.     Other Sheriffs worked with Richard to arrange for his family to exist the apartment without assault rifles aimed at them.

84.     Richard's family calmly exited the apartment.

85.     Sheriffs entered the apartment and checked every room for the target of their warrant.

86.     Within a couple of minutes, defendants knew Alejandro was not inside the apartment.

87.     Within a couple of minutes, defendants had easily searched every area in which a person might be concealed.

88.     During their search, defendants saw no evidence Alejandro had recently been in the apartment.

89.     However, THOMPSON and the Doe Defendants continued to search the apartment in a manner far exceeding their warrant.

90.     While THOMPSON and the Doe Defendants unlawfully searched the apartment, they held Richard and his family in detention in their living room.

91.     On information and belief, THOMPSON and the Doe Defendants knew they were exceeding the warrant.

92.     On information and belief, THOMPSON and the Doe Defendants knew whatever probable cause had justified the issuance of the warrant was dissipated within minutes of their entry into the home.

93.     THOMPSON and/or Doe Defendants damaged Richard's home in the process of their search.

94.     THOMPSON and/or Doe Defendants searched everything in the home, including spaces like underwear drawers, papers, and other effects.

95.     THOMPSON and the Doe Defendants extended Richard's detention in his home by continuing to search in excess of their warrant.

96.     THOMPSON and the Doe Defendants searched spaces far too small to conceal a person even though their warrant was for Alejandro.

97.    THOMPSON and the Doe Defendants searched papers and other effects which they understood did not have evidentiary value and would not contain information or evidence which could be seized pursuant to their warrant.

98.    At bottom, THOMPSON and the Doe Defendants rummaged through as much of the home and Richard's belongings as they could and left things scattered in a mess on the floor.

99.    Eventually, THOMPSON and the Doe Defendants released Richard and his family from detention.

100.    THOMPSON and the Doe Defendants left without having found any evidence Alejandro had been in the apartment in years.

101.    THOMPSON and the Doe Defendants left without having seized anything.

102.    As a result of THOMPSON's violent attack, Richard suffered and suffers physical and mental injuries, severe emotional distress, pain, and suffering.

103.    As a result of THOMPSON's and the Doe Defendant's unlawful detention of Richard (and extension of that detention), Richard suffered and suffers emotional distress, inconvenience, pain resulting from the handcuffs, and fear.

104.    As a result of THOMPSON's and the Doe Defendants' unlawful search of Richard's home, Richard suffered and suffers emotional distress, fear, inconvenience, property damage, and a significant invasion of his privacy.

105.    For reference, convenience, and clarity, but without in any way limiting the allegations or causes of action, plaintiff offers the following summary chart of the causes of action alleged herein:

| Cause of Action (and Number) | Defendant(s) |
| --- | --- |
| 1. 42 U.S.C. § 1983: Excessive Force | THOMPSON |
| 2. 42 U.S.C. § 1983: Illegal Detention | THOMPSON and Doe Defendants |
| 3. 42 U.S.C. § 1983: Illegal Search | THOMPSON and Doe Defendants |
| 4. Battery | THOMPSON |

| | and the COUNTY |
|---|---|
| 5. Assault | THOMPSON and the COUNTY |
| 6. Cal. Civil Code § 52.1 (Bane Act) | THOMPSON and the COUNTY |
| 7. Negligence | THOMPSON, Doe Defendants, and the COUNTY |
| 8. Intentional Infliction of Emotional Distress | THOMPSON and the COUNTY |

## PLAINTIFF'S CAUSES OF ACTION

### I.    FIRST CAUSE OF ACTION
### Excessive Force in Violation of the Fourth Amendment (pursuant to 42 U.S.C. § 1983) against THOMPSON

106.    Plaintiff realleges all prior paragraphs and incorporates the same herein by reference.

107.    THOMPSON violated Richard's Fourth Amendment rights when he handcuffed Richard and when he attacked Richard as described herein.

108.    As a direct and foreseeable result of THOMPSON's unreasonable and excessive uses of force, Richard suffered physical pain, injuries, suffering, severe emotional distress, mental anguish, and lasting mental injuries.

109.    Richards suffered special and general damages, including pain and suffering, along with further damages in an amount to be shown according to proof at trial.

110.    In using the force described herein, THOMPSON acted with malice, fraud, and oppression. He willfully, wantonly, and recklessly disregarded Richard's constitutional rights. As such, THOMPSON's actions justify an award of exemplary and punitive damages in an amount to be determined at the time of trial.

111.    Plaintiff further seeks attorney's fees and costs under this claim.

/ / /

/ / /

/ / /

## II.    SECOND CAUSE OF ACTION
### Unlawful Detention in Violation of the Fourth Amendment
### (pursuant to 42 U.S.C. § 1983) against THOMPSON and Doe Defendants

112.    Plaintiff realleges all prior paragraphs and incorporates the same herein by reference.

113.    THOMPSON and the Doe Defendants violated Richard's Fourth Amendment rights when they detained Richard by ordering him not to leave, continued to hold him in handcuffs, and compelled him to remain in his home while they searched it.

114.    The Doe Defendants acted in concert with THOMPSON to detain Richard in unlawfully detaining Richard and continuing to do so.

115.    The Doe Defendants and THOMPSON all had the ability to intervene to stop the unlawful detention of Richard but failed to do so.

116.    The Doe Defendants and THOMPSON all agreed with, facilitated, and actively participated in the unlawful detention of Richard.

117.    There was no investigative justification for detaining Richard, nor was there one for extending the detention.

118.    There was no safety justification for detaining Richard, nor was there one for extending the detention.

119.    The execution of the warrant did not justify detaining Richard outside of his home, moving him inside of his home, or compelling him to stay in his home, nor did it justify extending Richard's detention.

120.    Even if some detention of Richard were reasonable, which it was not, each additional moment in detention was unreasonable and in violation of the Fourth Amendment because the detention could not reasonably continue.

121.    As a direct and foreseeable result of the individual defendants' unreasonable and unlawful detention of Richard, Richard has experienced physical pain, injuries, suffering, severe emotional distress, mental anguish, and lasting mental injuries.

122.    Richards suffered special and general damages, including pain and suffering, along with further damages in an amount to be shown according to proof at trial.

123.    In detaining Richard as described herein, THOMPSON acted with malice, fraud, and oppression. He willfully, wantonly, and recklessly disregarded Richard's constitutional rights. As such, THOMPSON's actions justify an award of exemplary and punitive damages in an amount to be determined at the time of trial

124.    Plaintiff further seeks attorney's fees and costs under this claim.

### III.    THIRD CAUSE OF ACTION
### Unlawful Search in Violation of the Fourth Amendment
### (pursuant to 42 U.S.C. § 1983) against THOMPSON and Doe Defendants

125.    Plaintiff realleges all prior paragraphs and incorporates the same herein by reference.

126.    Richard had a fundamental right to privacy in his home, papers, and effects.

127.    THOMPSON and the Doe Defendants violated Richard's Fourth Amendment rights when they unlawfully and unreasonably searched areas of his home, papers, private spaces, and effects, in excess of the warrant which they claimed justified their entry into Richard's home.

128.    The Doe Defendants acted in concert with THOMPSON to search Richard's home and effects unreasonably and unlawfully and in continuing to do so.

129.    The Doe Defendants and THOMPSON all had the ability to intervene to stop the unlawful search of Richard's home and effects but failed to do so.

130.    The Doe Defendants and THOMPSON all agreed with, facilitated, and actively participated in the unlawful search of Richard's home.

131.    The individual defendants' search exceeded their warrant.

COMPLAINT

132.    The manner in which the defendants' search exceeded their warrant invaded Richard's privacy and his security in his own home, papers, and effects.

133.    Within moments of entering Richard's home, the defendants confirmed it did not contain Alejandro or evidence which could otherwise be seized.

134.    There was no investigative justification for continuing to search Richar's home once defendants confirmed it did not contain Alejandro or any other information or evidence subject to seizure.

135.    Even if some search were permitted under the warrant or otherwise reasonable and lawful, each additional search by the defendants was unreasonable and in violation of the Fourth Amendment.

136.    As a direct and foreseeable result of the individual defendants' unreasonable and unlawful search of Richard's home, papers, and effects, Richard has experienced fear, property damage, emotional distress, mental anguish, and distress at the wanton invasion of his own private affairs.

137.    Richards suffered special and general damages, including pain and suffering, along with further damages in an amount to be shown according to proof at trial.

138.    On information and belief, in searching as described herein, THOMPSON and the Doe Defendants acted with malice, fraud, and oppression. They willfully, wantonly, and recklessly disregarded Richard's constitutional rights. As such, their actions justify an award of exemplary and punitive damages in an amount to be determined at the time of trial.

139.    Plaintiff further seeks attorney's fees and costs under this claim.

## IV.    FOURTH CAUSE OF ACTION
### Battery against THOMPSON and the COUNTY

140.    Plaintiff realleges all prior paragraphs and incorporates the same herein by reference.

/ / /

141.   THOMPSON used unreasonable and excessive force on Richard. THOMPSON's use of force on Richard was also tortious.

142.   By attacking Richard, THOMPSON committed a battery against Richard.

143.   Richard did not, at any time, consent to being subject to the attack described herein.

144.   As a direct and foreseeable result of THOMPSON's use of force, Richard suffered injuries.

145.   Richard suffered general and special damages, along with further damages in an amount to be shown according to proof at the time of trial.

146.   THOMPSON's conduct was a substantial factor in causing Richard's injuries.

147.   Because THOMPSON acted in the scope of his employment, the COUNTY is vicariously liable for the harm proximately caused by his conduct pursuant to California Government Code § 815.2.

148.   THOMPSON acted with malice, fraud, and oppression when he committed a battery upon Richard. As such, THOMPSON's actions justify an award of exemplary and punitive damages in an amount to be determined at the time of trial.

### V.   FIFTH CAUSE OF ACTION
### Assault against THOMPSON and the COUNTY

149.   Plaintiff realleges all prior paragraphs and incorporates the same herein by reference.

150.   THOMPSON threatened to use unreasonable and excessive force on Richard in a manner which was tortious.

151.   THOMPSON threatened to attack and continue to attack Richard without just cause, which constituted a threat to touch Richard in a harmful or offensive manner.

152.    It reasonably appeared to Richard that THOMPSON was about to carry out the threat and attempted to carry out that threat.

153.    THOMPSON acted intending to cause harmful or offensive contact with Richard.

154.    Richard did not consent to THOMPSON's threatened harmful or offensive conduct.

155.    As a direct and foreseeable result of THOMPSON's threatened uses of force, Richard suffered injuries.

156.    Richard suffered general and special damages, along with further damages in an amount to be shown according to proof at the time of trial.

157.    Thompson's conduct was a substantial factor in causing Richard's harm.

158.    Because THOMPSON acted in the scope of their employment, the COUNTY is vicariously liable for the harm proximately caused by their conduct pursuant to California Government Code § 815.2.

159.    In threatening the force described above, THOMPSON acted with malice, fraud, and oppression. As such, his actions justify an award of exemplary and punitive damages in an amount to be determined at the time of trial.

## VI.    SIXTH CAUSE OF ACTION
### Violation of the Bane Act (Cal. Civ. Code § 52.1) against THOMPSON and the COUNTY

160.    Plaintiff realleges all prior paragraphs and incorporates the same herein by reference.

161.    When THOMPSON violently attacked Richard while he was handcuffed THOMPSON interfered with Richard's civil rights to be free from unreasonable and excessive force, unreasonable seizures, due process, and to equal protection of the laws.

162.    THOMPSON intentionally interfered with Richard's rights by threat, intimidation, and coercion.

163. THOMPSON acted violently against Richard to prevent him from exercising his rights. In doing so, THOMPSON intended to deprive Richard of the enjoyment of his rights.

164. As a direct and foreseeable result of THOMPSON's tortious conduct, Richard suffered grievous mental and physical injuries.

165. Richard suffered general and special damages, along with further damages in an amount to be shown according to proof at the time of trial.

166. THOMPSON's conduct was a substantial factor in causing Richard's harm.

167. Because THOMPSON acted in the scope of their employment, the COUNTY is vicariously liable for the harm proximately caused by their conduct pursuant to California Government Code § 815.2.

168. THOMPSON tortiously denied Richard the enjoyment of his rights while acting with malice, fraud, and oppression. As such, their actions justify an award of exemplary and punitive damages in an amount to be determined at the time of trial.

169. Plaintiff further seeks attorney's fees and costs under this claim.

## VII.  SEVENTH CAUSE OF ACTION
### Negligence against THOMPSON, DOES 1-15, and the COUNTY

170. Plaintiff realleges all prior paragraphs and incorporates the same herein by reference.

171. COUNTY employees, including the individual defendants, each had a duty to use reasonable care to prevent harm or injury to others.

172. By taking Richard into their custody, the individual defendants also took on special responsibilities to use care and prevent others from injuring or harming him.

173. Defendants' duties included using appropriate strategies, using appropriate tactics, giving appropriate commands, giving warnings, using only

reasonable force, complying with the Fourth Amendment, obeying limitations on any warrant, releasing detainees once their detention is no longer necessary or reasonable, preventing others from violating the rights of those in their detention and care, not unreasonably searching private spaces, and ceasing a search or seizure once probable cause and/or reasonable suspicion which may have ever justified it has dissipated.

174. THOMPSON and Does 1-15, and other COUNTY employees acting in the course of their employment, breached these duties of care and were negligent and reckless.

175. Their acts and omissions in violation of their duty include but are not limited to:

    a. detaining Richard;

    b. handcuffing Richard;

    c. continuing to detain Richard;

    d. continuing to handcuff Richard;

    e. unlawfully searching Richard's home, papers, and private effects;

    f. unlawfully searching in excess of any warrant, probable cause, or permissible investigative suspicion;

    g. failing to intervene to prevent others from breaching the foregoing duties despite opportunity and authority to do so;

    h. failing to issue warnings before using force;

    i. failing to communicate effectively;

    j. failing to de-escalate;

    k. conspiring with others to violate Richard's constitutional rights;

    l. knowingly facilitating and encouraging others to injure Richard in the ways described herein;

    m. damaging Richard's home and property; and

    n. attacking Richard.

176. As a direct and proximate result of defendants' breaches of their duties, Richard suffered injury, pain, suffering, severe emotional distress, mental anguish, and fear.

177. As a direct and proximate result of defendants' breaches of their duties, Richard has suffered general and special damages, as well as having lasting disabilities, in an amount to be proven at trial.

178. Because these acts occurred in the scope of employment, the COUNTY is vicariously liable for the harm proximately caused by their conduct pursuant to California Government Code § 815.2.

179. THOMPSON acted with malice, fraud, and oppression. As such, their actions justify an award of exemplary and punitive damages in an amount to be determined at the time of trial.

180. On information and belief, the Doe Defendants acted with malice, fraud, and oppression such that their actions justify an aware of exemplary and punitive damages in an amount to be determined at trial.

## VIII. <u>EIGHTH CAUSE OF ACTION</u>
### Intentional Infliction of Emotional Distress against THOMPSON and COUNTY

181. Plaintiff realleges all prior paragraphs and incorporates the same herein by reference.

182. THOMPSON's conduct was outrageous.

183. THOMPSON intended to cause Richard emotional distress or acted in reckless disregard of the probability that Richard would suffer emotional distress.

184. THOMPSON's conduct was a substantial factor in causing Richard to suffer severe emotional distress.

185. Because these acts occurred in the scope of THOMPSON's employment, the COUNTY is vicariously liable for the harm proximately caused by their conduct pursuant to California Government Code § 815.2.

186.   THOMPSON acted with malice, fraud, and oppression. As such, his actions justify an award of exemplary and punitive damages in an amount to be determined at the time of trial.

**PRAYER FOR RELIEF**

Plaintiff prays for judgment against defendants as follows:

        a.      General, compensatory, and special damages in an amount according to proof;

        b.      Punitive and exemplary damages against individual defendants as set forth above;

        c.      Civil penalties as provided by law;

        d.      Attorney fees pursuant to Cal. Civil Code § 52.1(b) and Cal. Civil Code § 52;

        e.      Costs and reasonable attorney fees pursuant to 42 U.S.C. § 1988;

        f.      All other damages, penalties, costs, and fees as allowed by Cal. Civ. Proc. §§ 377.20, 377.60, 1021.5;

        g.      Costs;

        h.      And for all other and further relief as the Court may deem proper.

DATE: October 16, 2024          MCKENZIE SCOTT, PC

                    By:   *s/ Marcus S. Bourassa*
                             TIMOTHY A. SCOTT
                             MARCUS S. BOURASSA
                             Attorneys for Plaintiff